# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) Case No. ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ❐ evidence of a crime;
- ❐ contraband, fruits of crime, or other items illegally possessed;
- ❐ property designed for use, intended for use, or used in committing a crime;
- ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                               *Offense Description*


The application is based on these facts:


- ❐ Continued on the attached sheet.
- ❐ Delayed notice of \_\_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state: _____

_____
*Printed name and title*

**AFFIDAVIT**

I, Ryan K. Averill, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May 2015. I completed the Criminal Investigations Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I also completed the ATF Special Agent Basic Training National Training Academy in Brunswick, Georgia. During those courses of study, I received training in the investigation of federal firearm and explosive violations. Before becoming a Special Agent with the ATF, I was employed as a Patrol Officer with the City and County of Honolulu Police Department ("HPD") for approximately four years.

2. I have conducted investigations involving the possession and use of narcotics and firearms by prohibited persons. While employed as an ATF SA and an HPD Patrol Officer, I have been involved in numerous investigations dealing with the possession and use of firearms and narcotics. I have also participated in the undercover purchase of firearms and narcotics. To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical surveillance, interviews, the utilization of undercover agents and informants, and the review of various databases and records. I have also received training during the course of my employment as an HPD Officer and an ATF SA on

various topics, including but not limited to robberies affecting interstate commerce, illegal trafficking of firearms and narcotics, the utilization of informants, the activities of criminal street gangs, asset forfeiture, and conducting surveillance.  Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by individuals to conspire to commit robberies; to smuggle, safeguard, and store firearms; to sell and distribute firearms and illegal narcotics; and to collect and launder related, illicit proceeds.

## II. **PURPOSE OF AFFIDAVIT**

3.   This affidavit is made in support of the following:

a.   A criminal complaint against, and arrest warrant for RUSSELL SWEIDA ("SWEIDA") for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922 (g)(1), and distribution of at least 50 grams of actual methamphetamine in violation of 21 U.S.C. § 841 (a)(1;

b.   An application for a warrant to search a grey 2005 Cadillac STS vehicle, bearing California license plate number 5LHM386 and Vehicle Identification Number ("VIN") 1G6DC67A4501418701 ("SUBJECT VEHICLE 1"), believed to be operated by SWEIDA;

c.   An application for a warrant to search a gold 2003 Cadillac Escalade vehicle, bearing California license plate number 6PIW003 and VIN 1GYEK63N33R213089 ("SUBJECT VEHICLE 2"); and

   d. An application for a warrant to search a residence located at 7674 Vale Drive in Whittier, California ("SUBJECT PREMISES 1"), SWEIDA's home address of record; and

   e. An application for a warrant to search a residence located at 3615 East 4th Street in Los Angeles, California ("SUBJECT PREMISES 2").

 4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. PREMISES TO BE SEARCHED

 5. The vehicles to be searched are SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2 and are further described in attachments A-1 and A-2, respectively. The residences to be searched is SUBJECT PREMISES 1 and SUBJECT PREMISES 2 and are further described in attachments A-3 and A-4, respectively. The list of items to be seized is set forth in Attachment B. Attachments A-1, A-2, A-3, A-4, and B are incorporated herein by reference.

### IV. STATEMENT OF PROBABLE CAUSE

**A. Background**

 6. I am the lead ATF agent assigned to the investigation of SWEIDA for the possession and sales of firearms and

methamphetamine. SWEIDA made such sales to an ATF confidential informant[1] ("the CI") and an ATF undercover agent ("the UC") on six separate occasions from November 15, 2017 to January 19, 2018. Those six transactions were audio and video recorded, and the recordings are stored in ATF evidence.

### B. Registration of SUBJECT VEHICLE 1

7. I conducted a California Department of Motor Vehicles ("CA DMV") records check and found that SUBJECT VEHICLE 1 was registered to SWEIDA at 7674 Vale Drive in Whittier, California (SUBJECT PREMISES 1). SWEIDA's current California driver's license address is also listed as SUBJECT PREMISES 1.

### C. Registration of SUBJECT VEHICLE 2

8. I conducted a CA DMV records check and found that SUBJECT VEHICLE 2 was sold to SWEIDA on November 11, 2016. The buyer of record is listed as "SWEIDA RUSSELL, 7674 VALE DR."

### D. November 15, 2017 Controlled Purchase of Methamphetamine Involving SUBJECT VEHICLE 1

9. I participated in the operation of a controlled purchase by the CI from SWEIDA on November 15, 2017. I have spoken to the CI about this purchase. The CI had a hidden video and audio recorder on the CI's person during the purchase. I

---

[1] The CI has felony convictions for the following offenses: burglary (1992); possession of a controlled substance for sale (1994); possession of a controlled substance (2000, 2008, 2010, 2011 and 2013); assault with a deadly weapon/not firearm (1995). The CI is being monetarily compensated for his work. The CI has proven truthful and reliable in a past ATF firearms and narcotics trafficking investigation. The CI additionally has misdemeanor convictions for the following offenses: driving under the influence and driving with a suspended sentence (2017), and possession of unlawful paraphernalia and possession of a controlled substance (2017).

4

have reviewed that recording. From my participation, the recording, and my conversation with the CI, I know the following:

        a. On November 15, 2017, at approximately 8:00 p.m., ATF conducted a controlled purchase of methamphetamine using the CI. The CI met with an individual who called himself "Russ" in a public parking lot in La Habra, California and purchased approximately 57 grams of methamphetamine from him. "Russ" provided the CI with two plastic bags containing the methamphetamine. In exchange, CI paid $460 to "Russ." "Russ" arrived at the sale alone, driving SUBJECT VEHICLE 1.

        b. I was present for the meeting following the sale, wherein ATF SA Ryan Stearman showed the CI a DMV photograph of SWEIDA with no other identifying markings, and the CI confirmed that the person depicted was the person the CI had just purchased methamphetamine from, whom the CI knew as "Russ."

    10. ATF agents subsequently sent the two bags of methamphetamines to the Drug Enforcement Administration ("DEA") Southwest Laboratory for chemical analysis. On December 8, 2017, the Southwest Laboratory issued a chemical analysis report confirming that the two plastic bags contained approximately 52.97 grams of methamphetamine with a substance purity of 96%.

    **E.    December 1, 2017 Controlled Purchase of Methamphetamine Involving SUBJECT VEHICLE 1**

    11. I participated in the operation of a controlled purchase by the CI and the UC from SWEIDA on December 1, 2017. I have spoken to the CI and the UC about this purchase. This

purchase was also captured on video and audio. I have reviewed that recording. From my participation, the recording, and my conversations with the CI and the UC, I know the following:

      a. On December 1, 2017 at approximately 7:30 p.m., an ATF controlled purchase was conducted in which the CI and the UC met with SWEIDA and purchased approximately 118 grams of methamphetamine from him. During the meeting, the CI paid $1,000 to SWEIDA. SWEIDA then placed one zip lock bag containing approximately 188 grams of methamphetamine in the CI's vehicle.

      b. During the December 1, 2017 meeting, the UC related to SWEIDA that he sells firearms and asked if SWEIDA had a "hook into that." SWEIDA responded by saying "That's what I've been doing too you know what I mean? I've been building my R's and shit ... getting them milled out .... I've been doing those and the K's and shit."

      c. Based on my training and experience, I know that the term "R's" is common street vernacular for AR-15 type rifles, and that the term "K's" is common street vernacular for an AK-47 type rifle.

      d. SWEIDA and the UC discussed other firearms and then discussed the prices at which SWEIDA would be willing to sell firearms to the UC. SWEIDA also related that he had multiple firearms "on hand" at that time that he would also be willing to sell or trade.

      e. SWEIDA arrived at this meeting alone and driving SUBJECT VEHICLE 1. The sale of methamphetamine occurred in a

6

public parking lot in La Habra, California.  Shortly after the transaction, SWEIDA was observed by Sergeant Thompson of the Brea Police Department ("BPD") pulling into the driveway at 7674 Vale Drive in Whittier, California (SUBJECT PREMISES 1) at approximately 8:11 p.m., driving SUBJECT VEHICLE 1.  Following this purchase, the UC observed a DMV photograph of SWEIDA and positively identified SWEIDA as the person from whom he had just purchased methamphetamine.

12.  ATF agents subsequently sent the one zip lock bag of methamphetamines to the DEA Southwest Laboratory for chemical analysis.  On December 26, 2017, the DEA Southwest Laboratory issued a chemical analysis report confirming that the one zip lock bag contained approximately 109 grams of methamphetamine with a substance purity of 98%.

### F.   December 5, 2017 Controlled Purchase of Firearms and Methamphetamine Involving SUBJECT VEHICLE 2

13.  I participated in the operation of a controlled purchase by the CI and the UC from SWEIDA on December 5, 2017.  I have spoken to the CI and the UC about this purchase.  This purchase was also captured on video and audio.  I have reviewed that recording.  From my participation, the recording, and my conversations with the CI and the UC, I know the following:

a.  On December 5, 2017 at approximately 6:20 p.m., an ATF controlled purchase was conducted.  This sale occurred in a public parking lot in La Habra, California.  SWEIDA arrived at the sale alone, driving SUBJECT VEHICLE 2.

7

   b. The CI and the UC met with SWEIDA to purchase approximately 119 grams of methamphetamine, two rifles and a short-barreled shotgun for a total price of $3,150 ($950 for the methamphetamine and $2,200 for the three firearms).  The CI paid $1,950 to SWEIDA and the UC provided $1,200 to SWEIDA.  SWEIDA opened the rear hatch of SUBJECT VEHICLE 2 and instructed the UC to retrieve a black rifle case which contained two rifles and a short barreled shotgun.  SWEIDA subsequently retrieved one clear zip lock bag from the center console of SUBJECT VEHICLE 2 and provided it to the CI.

  14. ATF agents subsequently sent the one zip lock bag of methamphetamines to the DEA Southwest Laboratory for chemical analysis.  On December 28, 2017, the Southwest Laboratory issued a chemical analysis report confirming that the one zip lock bag contained approximately 112.9 grams of methamphetamine with a substance purity of 96%.

  **G.** **December 14, 2017 Controlled Purchase of Firearms and Methamphetamine Involving SUBJECT VEHICLE 1**

  15. I participated in the operation of a controlled purchase by the UC from SWEIDA on December 14, 2017.  I have spoken to the UC about this purchase.  This purchase was also captured on video and audio.  I have reviewed that recording.  From my participation, the recording, and my conversation with the UC, I know the following:

   a. On December 14, 2017 at approximately 7:34 p.m., an ATF controlled purchase was conducted in which the UC met with SWEIDA and purchased approximately 232 grams of

8

methamphetamine, a rifle and a pistol for a total purchase price of $3,000 ($1,700 for the methamphetamine and $1,300 for a pistol and a rifle).  SWEIDA arrived at the sale with an unidentified female, and he was driving SUBJECT VEHICLE 1.  This sale occurred at a public parking lot in La Habra, California.

        b.   Prior to this sale, on the same day at approximately 6:00 p.m., SWEIDA was observed by BPD Sergeant Thompson arriving at 7674 Vale Drive, Whittier, CA (SUBJECT PREMISES 1) driving SUBJECT VEHICLE 1.  Shortly thereafter, at approximately 7:18 p.m., Sergeant Thompson observed SWEIDA leaving SUBJECT PREMISES 1 in SUBJECT VEHICLE 1.

        c.   At the public parking lot in La Habra, California, SWEIDA opened the rear hatch of his vehicle and showed the UC a black rifle case which contained a pistol and a rifle.  The UC then took the rifle case containing the pistol and rifle and placed it in the UC's vehicle.  The UC then attempted to pay SWEIDA the $3,000 ($1,700 for the methamphetamine and $1,300 for a pistol and a rifle).  SWEIDA then returned to the driver's seat of SUBJECT VEHICLE 1 and provided the UC with a zip lock plastic bag containing methamphetamine.  SWEIDA proceeded to count the money provided by the UC and determined that the UC had only provided $1,800.  The UC subsequently provided an additional $1,200 to SWEIDA.

    16.   ATF agents subsequently sent the one zip lock bag of methamphetamines to the DEA Southwest Laboratory for chemical analysis.  On February 8, 2018, the Southwest Laboratory issued a chemical analysis report confirming that the one zip lock bag

9

contained approximately 224 grams of methamphetamine with a substance purity of 99%.

### H. December 21, 2017 Controlled Purchase of Firearms and Methamphetamine Involving SUBJECT VEHICLE 2

17.  I participated in the operation of a controlled purchase by the UC from SWEIDA on December 21, 2017.  I have spoken to the UC about this purchase.  This purchase was also captured on video and audio.  I have reviewed that recording.  From my participation, the recording, and my conversation with the UC, I know the following:

   a.  On December 21, 2017 at approximately 2:35 p.m., an ATF controlled purchase was conducted in which the UC met with SWEIDA and purchased approximately 225 grams of methamphetamine and 2 pistols for a total price of $3,200 ($1,700 for the methamphetamine and $1,500 for two pistols).  SWEIDA arrived at the sale with an unknown female passenger, driving SUBJECT VEHICLE 2.

   b.  This sale occurred in a parking lot of a Burger King restaurant in La Habra, CA.  SWEIDA arrived at the parking lot and handed one large plastic zip lock bag containing four smaller bags of suspected methamphetamine to the UC.  The UC then placed the suspected methamphetamine in his vehicle.  SWEIDA then exited SUBJECT VEHICLE 2 and opened the rear driver's side door and showed the UC two pistols in their cases.  UC took the pistols in their cases and placed them in the trunk of his vehicle.  The UC returned and paid SWEIDA the total price of $3,200.

18. I conducted a preliminary field test of the suspected methamphetamine and the results were positive for methamphetamine. I also weighed the suspected methamphetamine with packaging and determined the total weight to be 225 grams. I subsequently sent the suspected methamphetamine with packaging to the DEA Southwest Laboratory for chemical analysis. I have not received the results.

### I. January 19, 2018 Controlled Purchase of Firearms and Methamphetamine Involving SUBJECT VEHICLE 1

19. I participated in the operation of a controlled purchase by the UC from SWEIDA on January 19, 2018. I have spoken to the UC about this purchase. This purchase was also captured on video and audio. I have reviewed that recording. From my participation, the recording, and my conversation with the UC, I know the following:

a. Prior to the controlled purchase, at approximately 12:55 p.m., the UC and SWEIDA exchange text messages regarding the meet location. SWEIDA asked to meet at a location in Los Angeles, to which the UC requested to meet at the same location from prior meets (La Habra parking lot). SWEIDA responded by text, "It's cuz the toys are right there. And I gotta get my kids from school at 2:30." Based on my training and experience, and participation in this investigation, I know that firearms traffickers often speak in coded language when discussing firearms. I believe that SWEIDA was referring to the two pistols when he referenced "toys." In

11

other conversations with the UC, SWEIDA has referred to firearms as "toys."

   b. The UC then responds via text, "K give me a spot. Lets make it quick." SWEIDA then texted the address of a carwash at 3585 East 4th Street in Los Angeles, California. Based on my review of google maps, this carwash is located approximately 433 feet from SUBJECT PREMISES 2.

   c. On January 19, 2018 at approximately 3:21 p.m., SWEIDA driving SUBJECT VEHICLE 1 pulled into the driveway of SUBJECT PREMISES 2. At approximately 3:26 p.m., SWEIDA drove SUBJECT VEHICLE 1 out of the driveway and met with the UC at approximately 3:27 p.m. The UC purchased approximately 214 grams methamphetamine and 2 pistols from SWEIDA.

   d. This sale occurred in a carwash parking lot in Los Angeles, California. SWEIDA arrived in SUBJECT VEHICLE 1 and then opened his trunk and showed the UC a black plastic bag containing two black pistol cases. The UC took the black plastic bag containing the two black pistol cases to the rear passenger side of his vehicle and the UC and SWEIDA discussed the pistols and opened one of the cases. SWEIDA then handed the UC a small, black nylon pouch containing suspected methamphetamine and the UC placed it in his vehicle. The UC subsequently paid SWEIDA a total of $3,100 ($1,700 for the methamphetamine and $1,400 for the pistols).

   e. Following the sale, at approximately 3:38 p.m., SWEIDA drove SUBJECT VEHICLE 1 back to the driveway of SUBJECT PREMISES 2 and exited SUBJECT VEHICLE 1. At approximately 3:49

p.m., I observed SWEIDA exit the front door of SUBJECT PREMISES 2.

      f.   On three separate occasions prior to the January 19, 2018 controlled substance purchase, a GPS tracking unit, obtain via court order (SA 17-413M), showed that SUBJECT VEHICLE 1 was at 3613/3615 East 4th Street in Los Angeles, California ("SUBJECT PREMISES 2"). The dates and times of those occasions were January 2, 2018 at 1:31 a.m., January 4, 2018 at 11:01 p.m., and January 16, 2018 at 7:01 p.m.

  20.  Based on my training and experience, I know that drug and firearm traffickers avoid driving vehicles with contraband in their vehicle in order to avoid contact with law enforcement while possessing contraband. Based on my training and experience, drug and firearm traffickers often select transaction locations that are near their stash houses (i.e. location in which they keep their contraband) in order to reduce the amount of time traffickers are required to transport the contraband.

  **J.**   **SWEIDA's Criminal History**

  21.  Based on my review of criminal history records, I know that SWEIDA was convicted of the following felony offenses, each of which is punishable by a term of imprisonment exceeding one year:

      a.   Possession of Marijuana for Sale, in violation of California Health & Safety Code § 11359, in the Superior Court of the State of California, County of Los Angeles, in case number BA338361, on or about May 20, 2008; and

13

        b.    Possession of a Controlled Substance While Armed, in violation of California Health & Safety Code § 11370.1(A), in the Superior Court of the State of California, County of Orange, in case number BA37223401, on or about March 22, 2011.

### K.    Interstate Nexus Re: Firearms

22.    I spoke with ATF SA Ludger Parent, an ATF Firearms and Ammunition Interstate Nexus Export, who reviewed the below-listed firearms purchased from SWEIDA as described in this affidavit and determined that the firearms moved in interstate or foreign commerce:

        a.    Russian Model SKS rifle, 7.62 x 32 caliber;

        b.    AK-47 type rifle, 7.62 x 32 caliber;

        c.    Remington 870 express, 12-gauge, short-barreled shotgun;

        d.    Mauser, model H.S.C. pistol, .32 caliber;

        e.    Winchester, model 61 rifle, .22 caliber;

        f.    Springfield, XD-9 pistol, 9mm caliber;

        g.    Kahr-Arms, P9 pistol, 9mm caliber;

        h.    Glock, model 27, .40 caliber;

        i.    Glock, model 27, .40 caliber.

### L.    SWEIDA's Lack of License to Deal Firearms

23.    I conducted a check of Federal Firearms Licensees and determined that SWEIDA is not an authorized dealer of firearms.

### V.    ITEMS TO BE SEIZED

24.    Based on the foregoing, I respectfully submit that there is probable cause to believe that the items listed in Attachment B, which constitute evidence of violations of 18

U.S.C. § 922 (g)(1): possession of a firearm by a convicted felon, 21 U.S.C. § 841 (a)(1): distribution of at least 50 grams of actual methamphetamine, and 18 U.S.C. § 922 (a)(1)(A): dealing firearms without a license, will be found in SUBJECT VEHICLE 1, SUBJECT VEHICLE 2, and SUBJECT PREMISES 1.

## VI. CONCLUSION

25. For all the reasons described above, there is probable cause to believe that evidence of violations of 18 U.S.C. § 922 (g)(1): possession of a firearm by a convicted felon, 21 U.S.C. § 841 (a)(1): distribution of at least 50 grams of actual methamphetamine, 18 U.S.C. § 922 (a)(1)(A): dealing firearms without a license, as described above and in Attachment B of this affidavit, will be found in a search of SUBJECT VEHICLE 1, SUBJECT VEHICLE 2, and SUBJECT PREMISES 1, as further described above and in Attachment A-1, A-2, and A-3 of this affidavit.

26. For all the reasons described above, there is probable cause to believe that RUSSELL SWEIDA has committed a violation of 18 U.S.C. § 922 (g)(1): possession of a firearm by a

//
//
//
//
//
//
//
//
//

15

convicted felon, and 21 U.S.C. § 841 (a)(1): distribution of at least 50 grams of actual methamphetamine.

RYAN K. AVERILL, Special Agent
Bureau OF Alcohol, Tobacco, Firearms, AND Explosives

Subscribed to and sworn before me this \_\_\_\_ day of February, 2018.

HONORABLE
UNITED STATES MAGISTRATE JUDGE

16

**ATTACHMENT A-1**

<u>SUBJECT VEHICLE TO BE SEARCHED</u>:

2005 Cadillac STS, grey in color, California license plate 5LHM386, vehicle identification number 1G6DC67A4501418701.

**ATTACHMENT B**

ITEMS TO BE SEIZED

Evidence, instrumentalities, fruits and contraband concerning violations of Title 21, United States Code, Sections 841(a)(1) and Title 18, United States Code, Sections 922(a)(1)(A) and (g)(1), as follows:

1. Narcotics, paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades and plastic bags.

2. Paraphernalia for packaging cash drug proceeds including heat sealing devices, plastic packaging for cash, rubber bands, and money counting devices.

3. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to distribution of controlled substances.

4. Books, records, receipts, notes, ledgers, airline tickets, money orders, wire transfer or money remittance records, and other records related to the receipt, expenditure and concealment or other disposition of income.

5. Cash, currency, financial instruments, and records relating to controlled substances income and expenditures of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging, in drug trafficking activities.

    6.    Photographs of individuals, associates, their property and their drugs.

    7.    Records reflecting names, nicknames, addresses, and telephone numbers of both current and past drug associates.

    8.    Safes, safety deposit boxes, keys for safety deposit boxes, hidden compartments and other secure locations, which often contain the proceeds of narcotics trafficking activity, including large amounts of United States currency, financial instruments, precious metals, jewelry, and other items of value, as well as books and records regarding the acquisition, use, and disposition of such items of value.

    9.    Canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys.

    10.    Documents related to rental, lease, or ownership of the search sites identified herein.

    12.    Firearms, ammunition, firearm magazines and any other weapon utilized to protect drugs, cash, and assets.